RAMSEY *v.* MINGLEDORFF, superintendent, *et al.*

No. 11197.   FEBRUARY 21, 1936.

*Clarence T. Guyton,* for plaintiff.   *H. A. Boykin,* for defendants.

BELL, Justice.   H. N. Ramsey Jr. filed a suit for the writ of mandamus to compel E. B. Mingledorff, as county school superintendent of Effingham County, and C. Bowers Gnann and others constituting the board of education, to issue to the plaintiff a commission as a trustee of the Springfield School District of that county.   The plaintiff alleged that he had been duly elected to this office on September 20, 1935, at an election duly called for that purpose, as shown by election returns duly made to the defendants by the managers of that election.   It appears from the petition that the plaintiff received the highest number of votes, to wit: 28, and that the next highest number was 22, received by J. C. Varnell.   The petition further alleged that "on Tuesday, October 1st, 1935, said board of education met in a regular monthly meeting, and at said time failed and refused to commission petitioner as trustee of said district and continues to fail and refuse to commission petitioner, although admitting his qualifications for the office of trustee; said failure and refusal being without

any lawful excuse or reason." The defendants filed an answer admitting their refusal to commission the plaintiff as a trustee, but giving as a reason therefor, "that the certified returns made to the board of education showed upon their face that J. C. Varnell had received 22 votes. H. N. Ramsey Jr. received 14 votes, and H. N. Ramsey received 14 votes. It was contended before your defendants that Harry Ramsey and H. N. Ramsey Jr. were one and the same person, and your defendants were asked to add 14 votes for Harry Ramsey to the 14 votes received by H. N. Ramsey Jr.; that your petitioners were without authority to correct the returns, if improper, that under the law they could only declare the result of said election as certified to them, and they had no authority to change the result as certified by the managers of said election." The defendants further alleged that the polls at such election should have opened at 10 o'clock a. m., and closed at 4 p. m., when as a matter of fact the polls closed at 3:30 p. m.; and that they were informed that shortly after the polls were closed several citizens demanded the right to vote, or appeared for the purpose of casting their ballots, but were either denied, or could not get, an opportunity to vote at the election. When the defendants examined the consolidated returns and were informed that the plaintiff, H. N. Ramsey Jr., claimed the votes cast for Harry Ramsey, they considered themselves without authority to comply with his request; and since it appeared that the polls had closed earlier than was proposed, and that a number of citizens had lost the right to vote on that account, the defendants concluded that in the interest of harmony and fair play they would order a new election to be held, at which time "all the voters could cast their ballot and elect a trustee for said school district."

The foregoing is a statement of the substantial allegations of the petition and answer. At the hearing the court denied a mandamus absolute, and the plaintiff excepted. The evidence was in accord with the pleadings, and presented no material issue of fact. It appeared without dispute that H. N. Ramsey Jr. and Harry Ramsey were one and the same person, and that this had been shown to the defendants at the time the plaintiff demanded his commission. The defendants admitted that the plaintiff had the qualifications prescribed by law for eligibility. The call for the election did not specify the hours for opening and closing the polls, the notice pre-

pared by the superintendent having been "left blank for the secretary of the local board of trustees to fill in the hours." It appeared that the trustees had caused an announcement to be made at school that the polls would open at 10 a. m. and close at 4 p. m., whereas the polls actually closed at 3:35 p. m. Nine voters appeared for the purpose of voting after the polls were closed, but they were not allowed to vote. Only four of these persons testified at the trial, and only two of the four testified that they would have voted for J. C. Varnell. The other two did not divulge how they would have voted.

1. The court erred in refusing to grant a mandamus absolute. When it appeared to the board of education, without dispute, that "H. N. Ramsey Jr." and "Harry Ramsey" were but variations of the name of this plaintiff, and that the total vote accorded to him under them exceeded the vote cast for any other candidate, it was the duty of the board of education to treat the plaintiff as the person receiving the highest number of votes at the election, and to issue a commission to him, provided there was no other legal obstacle. *Ansley* v. *Green*, 82 *Ga.* 181 (3) (7 S. E. 921); *Hicks* v. *Riley*, 83 *Ga.* 332 (9 S. E. 771); *Parramore* v. *Alexander*, 132 *Ga.* 642 (2) (64 S. E. 660). The only purpose of the election was to ascertain the will of the people as to who should serve as trustee; and in it they selected the plaintiff, some calling him H. N. Ramsey Jr., and others Harry Ramsey. Whether the managers under the law could or should have reported only the total vote received by such person, their failure to do so did not render the election void, or authorize the board of education to ignore it when it was explained without dispute that the 14 votes cast for H. N. Ramsey Jr., and the 14 votes cast for Harry Ramsey, were all intended for the same person, and in the aggregate gave to such person the highest number received by any candidate.

2. There was no question as to the eligibility of the plaintiff to serve as a school trustee. "If intelligent citizens of good moral character, who are known to be earnest supporters of public education, are duly elected trustees of a school district, the county board of education is not clothed with absolute discretion to refuse to approve their election and to commission them, said board having power to refuse to confirm the election of such trustees only when the persons elected are unqualified for the work; that is, where they

lack the qualifications prescribed for such trustees under this section." *Bryant* v. *Board of Education,* 156 *Ga.* 688 (2, *b*) (119 S. E. 601).

3. "No election shall be defeated for noncompliance with the requirements of the law, if held at the proper time and place by persons qualified to hold it, unless it is shown that, by such noncompliance, the result is different from what it would have been had there been proper compliance." Code of 1933, § 34-3101. This election was not rendered void merely because the polls were closed about twenty-five minutes before the time announced; and therefore it was improper for the defendants to call a second election on that account. See, in this connection, *Jossey* v. *Speer,* 107 *Ga.* 828 (33 S. E. 718); *Chamlee* v. *Davis,* 115 *Ga.* 266 (41 S. E. 691); *Gilliam* v. *Green,* 122 *Ga.* 322 (3) (50 S. E. 137); *Brumby* v. *Marietta,* 132 *Ga.* 408 (64 S. E. 321); 20 C. J. 173, § 209; 9 R. C. L. 1107, § 111.

4. In *Nash* v. *Robinson,* 159 *Ga.* 185 (125 S. E. 58), it was held: "Under the act of 1919 (Acts 1919, pp. 288, 324, 8 Park's Code Supp. 1922, § 1437j), which provides that the county boards of education of the respective counties of the State shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, such county board of education has no power or authority to hear and determine election contests growing out of the election of a school trustee within a local school district within a certain county in this State. The ordinary of the county wherein such contest may arise has jurisdiction to hear and determine such contest." While no contest was filed in regard to this election, the decision just referred to will show that if the election was not void, the board of education were compelled to treat it as valid, and should not have called a new election. Under the pleadings and the evidence, the plaintiff was entitled to be commissioned as a trustee; and mandamus was an available remedy. *Board of Education* v. *Huddleston,* 174 *Ga.* 761 (163 S. E. 887).

*Judgment reversed. All the Justices concur.*